466 F.2d 588
 MILWAUKEE GEAR COMPANY
v.
CHARLES BENJAMIN, INC., et al., Appellants in 71-1700.
CAMPBELL SOUP COMPANY, Appellant in 71-1701,
v.
CHARLES BENJAMIN, INC., et al.
CAMPBELL SOUP COMPANY
v.
CHARLES BENJAMIN, INC., et al., Appellants in 71-1702.
NAGER ELECTRIC CO., INC., Appellant in 71-1703,
v.
CHARLES BENJAMIN, INC., et al.
NAGER ELECTRIC CO., Inc.
v.
CHARLES BENJAMIN, INC., et al. Appellants in 71-1704.
WESTERN GEAR CORPORATION
v.
CHARLES BENJAMIN, INC., Appellant in 71-1705.
WESTERN GEAR CORPORATION
v.
BENJAMIN WAREHOUSE CO., Inc., et al., Appellants in 71-1706.
 Nos. 71-1700 to 71-1706.
 United States Court of Appeals,
Third Circuit.
 Argued June 5, 1972.
Decided Sept. 7, 1972.
 
 Stephen A. Cozen, Philadelphia, Pa., for Charles Benjamin, Inc. and others, appellees.
 J. Paul Erwin, Jr., White & Williams, Philadelphia, Pa., for Western Gear Corp., appellee.
 Francis E. Marshall, Marshall, Dennehey & Warner, Philadelphia, Pa. (Stephen A. Cozen, Orlofsky, Cozen & Begier, Philadelphia, Pa., on the brief), for Charles Benjamin, Inc., and others, and Benjamin Warehouse Co., Inc. and others, appellants.
 Lewis Weinstock, LaBrum & Doak, Philadelphia, Pa. (Anthony F. Walsh, Philadelphia, Pa., on the brief), for Campbell Soup Co. and Nager Electric Co., appellants and appellees.
 Before SEITZ, Chief Judge, and GIBBONS and MAX ROSENN, Circuit Judges.
 OPINION OF THE COURT
 MAX ROSENN, Circuit Judge.
 
 
 1
 This is an appeal from judgments entered by the United States District Court for the Eastern District of Pennsylvania in five actions, consolidated for trial, in which plaintiffs sought to recover damages for losses of machinery and equipment stored by them in the defendants' warehouse. Both the plaintiffs and the defendants in this diversity tort action have appealed.[1] The major questions presented concern evidentiary rulings of the trial judge.
 
 
 2
 The incident which founds this case is a fire which occurred on February 26, 1964, in a Philadelphia warehouse operated by the defendants.[2] Since limited issues are raised in this appeal, we present only the factual background of the case necessary to our decision.
 
 
 3
 Plaintiffs attempt to establish defendants' negligence as the cause of the fire hinged upon the testimony of a Lt. Short, at the time Assistant Fire Marshal, assigned to the area in which the warehouse was located. The fire raged for a number of hours. When he learned of the fire, and while it was still in progress, Lt. Short, in accordance with his established duties, commenced his investigation of its cause. In the course of that investigation, he interviewed two warehouse employees of the defendants, Wayne Steinard and John McElwee. Although Steinard and McElwee were interviewed some time after the fire commenced, they were first interrogated directly across the street from the blazing fire and in full view of it. About fifteen or twenty minutes after the first interview with Steinard, both gentlemen were again interviewed by Lt. Short in an office, out of sight of the fire and about a half block away.
 
 
 4
 At trial, Lt. Short, called as a witness by the plaintiffs, read from his notes of those interviews. The testimony so elicited was damaging to the defendants, and they objected to its introduction.[3] The district court allowed the testimony as a spontaneous utterance - an exception to the general hearsay exclusion. The defendants' first issue raised before this court concerns the propriety of this ruling.
 
 
 
 * * *
 Defendants argue that this testimony was not a spontaneous utterance because the interviews took place a half block away from the fire scene; that the "engine companies, fire boats, ladder companies, and firemen were out of sight;" and the joint statements were made not at the height of the fire, but at its conclusion, "long after the last fire company had arrived at the scene." Finally, they note that Lt. Short's testimony should be read as meaning that the employees were "normal and rational" at the time the joint statement was made.
 We believe that the district court analysis of the legal tests applicable for admission of evidence as a "spontaneous utterance" was correct; furthermore, we find substantial evidence to support his conclusions.
 We summarized the applicable law of "spontaneous utterances" in McCurdy v. Greyhound Corp., 346 F.2d 224, 226 (3d Cir. 1965):
 Over the years the Pennsylvania courts and this court have recognized that a hearsay statement is admissible as part of the 'res gestae' if made by a participant in the event during a period when he was, for any reason, incapable of reasoned reflection about the occurrence. [Citations omitted]. Such a statement is trustworthy if made during the period when 'considerations of self-interest could not have been brought fully to bear' on the event. 3 Wigmore, Evidence 738 (2d ed.) as quoted in Allen v. Mack, [345 Pa. 407] 28 A.2d at 784. In each case the court is required to examine the facts in light of the general principles. Commonwealth v. Noble [371 Pa. 138, 88 A.2d 760], supra. Thus, extensive examination of applicable authorities and comparison of decisions based on the analysis of other quite diverse fact patterns is neither necessary nor useful. No arbitrary time or other limits on the operation of the rule have been accepted by the Pennsylvania courts. Campbell v. Gladden, [383 Pa. 144, 118 A.2d 133] supra; Commonwealth v. Noble, supra; Smith v. State Workmen's Ins. Fund, 140 Pa.Super. 602, 14 A.2d 554 (1940); Commonwealth v. Stallone, 281 Pa. 41, 126 A. 56, 58 (1924). (emphasis supplied).
 When reduced to its basic structure, the defendants' argument is that, the plaintiffs did not present such facts as would enable them to properly utilize the rule of law defined above. The defendants assert, in essence, that the fire was ominous enough to eliminate "considerations of self interest" only in its initial stages: that is, when the firetrucks were arriving on the scene, and actual knowledge that a fire had started, became known.
 This was not an ordinary fire. It was "one of the largest fires" in the history of the Philadelphia Fire Department. It was about seven hours in duration and brought to the scene hundreds of firemen, more than two dozen engine companies, six ladder companies, two fireboats and one rescue squad. As the district court pointed out, "an event such as this fire is not the momentary shock of the ordinary accident. It is an ongoing terror, continuing until it is extinguished or brought under control." (emphasis supplied). A fire reaches its crescendo at the moment it hovers between possibly raging out of control, and the chance it may be brought within manageability. This point, in some fires, may be early; in others, it may be late. Here, as the district court noted: ". . . the statements . . . were made at the height of the conflagration." Additionally, it should be noted that testimony was presented which tended to establish that Steinard and McElwee were "upset" at the time they were interviewed by Lt. Short. We believe that there was sufficient evidence to warrant the trial judge's assessment that the statements were made at a time when the employees were still in a state of nervous excitement and their reflective powers were still in abeyance.
 The second point raised by the defendants in this appeal concerns whether the district court properly allowed the plaintiffs to introduce certain evidence for impeachment purposes. The incident to which the defendants call attention concerns the testimony of Chief Fire Marshal Connolly, a witness called by the defense. Connolly, who had been present at the second interview which Lt. Short had with Steinard and McElwee, testified that McElwee had stated that the fire was caused by "an explosion in the towmotor . . . the backfiring of the towmotor." (emphasis supplied). This testimony was damaging to the plaintiffs. The district court permitted the plaintiffs to question Connolly on the contents of the official report, which he had signed, and which summarized facts and conclusions concerning how the fire had started. Plaintiffs' purpose was, as the district court stated, to show that Connolly:
 . . . in the nature of a prior inconsistent statement, contrary to his testimony here that another possible cause of the fire had been mentioned, he had approved an official report which contained no mention of that other cause.
 Defendants now argue that this was error because "it introduced into the record conclusory statements and opinions as to the cause of the fire, which the Court had previously, properly excluded." However, defendants cite no "conclusory statement" which the court allowed. Nor has this court found any. Defendants also argue that Connolly had already explained why he approved the inconsistent report on direct examination, and thus further evidence was unnecessary. In essence, this is nothing more than an argument that plaintiffs were bound by Connolly's explanation of the inconsistency, which in effect anticipated the cross-examination to follow. Defendants have cited no authority for the proposition that a witness may eliminate the direct confrontation, which derives from cross-examination, by anticipating the arguments of the defense. We view their novel argument as without merit. It also disregards the considerable discretion vested in the trial judge "in the procedure to be used in allowing use of prior inconsistent statements in cross-examination of a witness." United States v. Bernstein, 417 F.2d 641, 644 (2d Cir. 1969).
 Defendants' final argument is that their constitutional right to a fair and impartial jury was violated when, at voir dire, the plaintiffs were allowed to ask prospective jurors three questions:
 
 
 [1]
 Are any of you employed by or stockholders in any insurance company which is engaged in the casualty insurance business?
 
 
 [2]
 Are any of you engaged in the general insurance agency business or are any of you an agent for a casualty insurance company?
 
 
 [3]
 Have any of you ever worked as a claims investigator or insurance adjuster?
 These three questions were taken verbatim by the plaintiffs from Kiernan v. Van Schaik, 347 F.2d 775 (3d Cir. 1965).
 Defendants call attention to the fact that plaintiffs had been allowed previously to inquire as to the prospective jurors' occupations and their spouses' occupations. Thus, the defendants argue that allowing the Kiernan questions was to do nothing more than "inject the spectre of insurance coverage of defendants into the case."
 We believe that the district court properly allowed these questions. As the court noted:
 It is not enough for a plaintiff to know merely the employment of a prospective juror. He is entitled to know whether the juror is or may be insurance-oriented. It is, of course, axiomatic that generally insurance covers those against whom claims are asserted and when the claim is asserted in court, the target is the defendant. Certainly, the three questions approved by the Court of Appeals are precisely designed to ferret out an insurance (defendant) bias. One's predelictions may be formed consciously or subconsciously and we cannot say that a casualty insurance company stockholder, for example, could not have at least a subconscious bias in favor of such companies.
 In essence, the defendants ask this court to overrule Kiernan, although strenuous attempts are made to distinguish Kiernan from the instant case. This we are not prepared to do. The questions asked by the plaintiffs-questions taken verbatim from Kiernan - were proper.[4]
 Plaintiffs have also raised an issue in this appeal. They contend that the district court erred in not allowing interest as compensation for delay in payments. The district court relied on Marrazzo v. Scranton Nehi Bottling Co., Inc., 438 Pa. 72, 263 A.2d 336 (1970). We believe that the district court properly applied the following holding of Marrazzo:
 We have emphasized that compensation for delay in payment is not a matter of right but is an issue for the finder of fact, the resolution of which depends upon all the circumstances of the case. Id. at 75, 263 A.2d at 337.
 The district court considered all the relevant "circumstances of the case." It noted that:
 Lt. Short's testimony . . . might or might not have been believed . . .. There was, in short, no inescapable obligation for defendants to pay in the absence of a jury command. That defendants were justified in withholding payment until compelled by a jury to do so is underscored by the fact that one jury was unable to reach agreement on its responsibility.
 The judgment of the district court will be affirmed.
 
 
 [1]
 Although five actions were consolidated and tried before the district court, there are actually only four plaintiffs, as Western Gear Corporation pursued two separate complaints. The other plaintiffs are: Nager Electric Company, Inc., Campbell Soup Company and Milwaukee Gear Co. There are seven appeals since the defendants also appealed from four of the judgments
 
 
 [2]
 The fire which indisputably destroyed property belonging to the plaintiffs was extremely large. The warehouse operated by the defendants comprised an entire block and was almost completely destroyed. Within approximately forty minutes after the blaze had been reported, it developed into a seven alarm fire
 
 
 [3]
 The testimony given by Lt. Short, in reference to Wayne Steinard, was as follows:
 Q: Now, on the occasion of the first time you talked to Mr. Steinard what did he tell you?
 A: _ _ trying to start tow motor. Spilled gasoline on floor. Had jumper cables. Then gasoline ignited and cardboard cartons.
 Lt. Short also testified as follows concerning a second interview with both Steinard and McElwee:
 Q: And what did they tell you at that time?
 A: In the office?
 Q: Yes
 A: Wayne took twelve-volt battery to jump forklift right next to the cartons.
 Q: Who is Wayne, do you know?
 A: Wayne Steinard.
 Q: All right.
 A: Next to the mechanics' bay in the second bay on the south side. Started the forklift. Told him to shut forklift. Float on carburetor stuck. Gasoline on concrete floor. Told to shut down. Spark from jumper on forklift ignited gasoline. Was in middle of the fire. He got burned. Tried to fight the fire. Used five or six extinguishers. Gasoline ignited the cartons. Three hundred cartons.
 This testimony formed the crux of the plaintiffs' case, since it tended to establish negligence on the part of defendants' employees in attempting to start their forklift truck while gasoline was on the concrete floor surrounding the truck. This testimony tended to establish that this was the specific cause of the fire.
 
 
 [4]
 Defendants, by letter of June 22, 1972, called the attention of this court to the recent case of Bentivoglio v. Ralston, 447 Pa. 24, 288 A.2d 745 (1972). They argue that Bentivoglio requires a reversal of the district court on the issue of admission of the "Kiernan questions." In Bentivoglio the Pennsylvania Supreme Court chose not to reverse the trial court which had not allowed counsel to question the prospective jury members with the Kiernan questions
 Although Bentivoglio perhaps casts some doubt on the holding in Kiernan, we do not believe that it requires a reversal here. In the instant case, we deal with the converse situation of Bentivoglio; that is to say, where the trial court has allowed in the Kiernan questions. We do not believe that the Pennsylvania Supreme Court saw the holding in Bentivoglio as extending to this situation. The court stressed that: "A trial judge has broad discretion as to the questions to be asked." Id. at 31, 288 A.2d at 749.