

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2006

# USA v. Stewart

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2184

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Stewart" (2006). *2006 Decisions.* Paper 1157.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2184
_____

UNITED STATES OF AMERICA

v.

BRUCE STEWART,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
D.C. Crim. Action No. 02-cr-00062-1
(Honorable Joseph J. Farnan, Jr.)

_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2006

Before: SCIRICA, *Chief Judge*, NYGAARD, and ALARCÓN,[*] *Circuit Judges*.

(Filed:  May 4, 2006)
_____

OPINION OF THE COURT
_____

ALARCÓN, *Circuit Judge*.

---

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

Bruce Stewart appeals from the judgment of conviction and the District Court's sentencing decision. He contends that the judgment must be reversed because the District Court erred in its rulings on (1) the impact of pre-indictment delay on his right to due process, (2) the impanelment of an anonymous jury, (3) the sufficiency of the evidence, (4) the admissibility of evidence, and (5) the sentence it imposed. We will affirm because we conclude that there is no merit to these contentions.

**I**

Because we write for the parties in this non-precedential opinion, our recitation of the facts will be abbreviated. Mr. Stewart was indicted on June 11, 2002, in the United States District Court for the District of Delaware. He was charged with conspiracy to possess cocaine with intent to distribute more than five kilograms, seven counts of possession with intent to distribute cocaine, interstate travel in aid of a racketeering activity, and attempted money laundering. His motion to dismiss the indictment for pre-arrest delay was denied. The jury convicted him of each crime alleged in the indictment.

The District Court denied his motion for a new trial. He was sentenced to life imprisonment on the conspiracy count, 360 months on each possession count, 60 months on the interstate travel in aid of racketeering count, and 240 months on the attempted money laundering count.

He has timely appealed from the judgment of conviction and the sentencing

decision.  This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

### A

Mr. Stewart contends that he was denied his right to due process because of the delay of almost two years before he was indicted in the District of Delaware.  He had previously been arrested on the same charges on April 3, 2000.  A criminal complaint was filed in the United States District Court for the Eastern District of Pennsylvania.  On April 7, 2000, the complaint was dismissed by a magistrate judge for lack of probable cause.

> [T]o obtain a dismissal of charges on the grounds of pre-indictment delay pursuant to the Due Process Clause, a defendant must bear the burden of proving two essential facts: (1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and that (2) this intentional delay caused the defendant actual prejudice.

*United States v. Ismaili*, 828 F.2d at 167 (3d Cir. 1987) (citing *United States v. Marion*, 404 U.S. 325).

A District Court's findings with respect to actual prejudice and intentional delay are reviewed for clear error.  *Ismaili*, 282 F.2d at 169.  "To invoke the extreme sanction of dismissal of the indictment[]" a defendant must satisfy both prongs of the *Marion* standard.  *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985).

The District Court found that "there was no evidence that the Government

3

deliberately delayed the indictment for tactical advantage." Mr. Stewart asserts that "there has been no suggestion or evidence by the government as to why it took over 2 years to bring the new charges against him for matters that occurred in January through March of 2000." Appellant's Br. 76. This argument ignores the requirement that the defendant bears the initial burden of demonstrating intentional delay. Accordingly, the District Court did not clearly err in denying the motion to dismiss the indictment.

**B**

Mr. Stewart argues that he is entitled to a new trial because the District Court abused its discretion in selecting a jury without disclosing the names of the jurors to counsel and in failing to instruct the jurors about their anonymity. He contends that this error denied him the presumption of innocence and a fair trial. This Court reviews a trial court's decision to impanel an anonymous jury for abuse of discretion. An appellate court must be "'particularly deferential' to the district court's 'substantial discretion' to empanel an anonymous jury." *United States v. Thornton*, 1F.3d 149, 154 (3d Cir. 1993) (citations omitted). A trial court's decision is afforded such deference because it is more familiar with the "local ambience." *United States v. Scarfo*, 50 F.2d 1015, 1023 (3d Cir. 1988). In determining whether to impanel an anonymous jury, a trial court is not required to conduct an evidentiary hearing, or to set forth its reasons for doing so. *United States v. Eufrasio*, 935 F.2d 553, 574 (3d Cir. 1991).

Mr. Stewart maintains that selecting an anonymous jury made it difficult to exercise his challenges. He contends that there was no evidence that Mr. Stewart presented any threat to the jury because he had been in custody for almost two years. He also asserts that his alleged cohorts were not a threat because they were either dead or cooperating with the Government.

After the jury was selected, Mr. Stewart's counsel inquired: "This jury really does not know its anonymous. Is that a fair statement?" The Court responded:

> Yes. As I said at the beginning of the process, every juror in this District, every jury in this District is selected by number, so there's nothing that this jury would need to be informed of because, as far as they would know externally, they've been chosen just like every other jury.

Mr. Stewart argues that "the jurors were exposed to all types of publicity during the course of this trial and a great deal of the publicity referred to the fact that the jury was anonymous." Appellant's Br. 64-65. Mr. Stewart failed to offer any evidence that demonstrate that the jury may have learned that it was anonymous from the media coverage of the trial. The record shows that the District Court repeatedly instructed the jury to avoid any media reports about the trial.

Mr. Stewart also argues that the fact that the jurors' names were not revealed to him interfered with his ability to determine the ethnic background of the jurors for

purposes of exercising peremptory challenges.[1]  The disclosure of the prospective jurors'

names for this purpose would have been contrary to the Supreme Court's decisions in

*Georgia v. McCollum*, 505 U.S. 42 (1992) and *Batson v. Kentucky*, 476 U.S. 79 (1986).

Mr. Stewart has failed to demonstrate that the District Court abused its discretion

in selecting an anonymous jury.  Since the jury was chosen just like every other jury, the

District Court did not err in declining to instruct the jury that it had been selected

anonymously.

## C

Mr. Stewart also asserts that we must reverse the judgment of conviction because

the evidence was insufficient to establish that the nature or the weight of the substance he

---

[1]Before the trial court, Mr. Stewart's counsel argued:

> But I would like to know, generally I do need their names.  In
> my brief, I gave you the importance.  I told you many lawyers
> use names, use ethnic background.  Chuck Peruto used the
> Irish and the Italian ethnic backgrounds.  That was a main
> way of doing things.  Many prominent lawyers, when we go
> through how they select jury process, are obviously fascinated
> by how each lawyer does it.  Why? Because that is where you
> win your cases unless you are a tremendous trial lawyer.  You
> pick a bad jury, look out in these matters.  Ethnic background,
> names are important.  It's one of those little clues that you
> have because voir dire is useful but it's pretty of your gut in
> looking at someone.

Appellant's App. Vol III A619

allegedly possessed. He argues that the Government failed to present any direct evidence or expert testimony that he possessed cocaine because none was seized from him or tested by experts.

Review of the sufficiency of evidence supporting a conviction is "highly deferential." *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001) (citations omitted). This Court "must determine whether the evidence submitted at trial, 'when viewed in the light most favorable to the government, would allow a rational trier of fact to convict.'" *Id.* (quoting *United States v. Helbling*, 209 F.3d 226, 238 (3d Cir. 2000)).

It is well-established that "lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction." *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976); *see also Griffin v. Spratt*, 969 F.2d 16, 22 (3d Cir. 1992) (stating that the prosecution "may establish the identity of a drug through cumulative circumstantial evidence.") (citations omitted). "So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable." *Id.*; *see also United States v. Harrell*, 737 F.2d 971, 978 (11th Cir. 1984) (explaining that direct evidence is not required, and circumstantial evidence is sufficient to prove the identity of a controlled substance); *United States v. Sanchez-DeFundora*, 893

7

F.2d 1173, 1175 (10th Cir. 1990) (same); *United States v. Osgood*, 794 F.2d 1087, 1095 (5th Cir. 1986) (same).

Circumstantial proof of the identity of the substance may include evidence of the appearance of the substance involved in the transaction: "[T]estimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence." *Dolan*, 544 F.2d at 1221; *see also Sanchez*, 893 F.2d at 1175-76 (holding that evidence was sufficient to prove the substance was cocaine, even though Government did not introduce scientific evidence).

Here, as in *Dolan*, the Government produced circumstantial evidence demonstrating the identity of the substance. Alexis Outlaw was a prior cocaine user who served as Mr. Stewart's courier. She testified that the substance was cocaine because of its physical appearance, the price paid for it, the covert manner in which the transactions involving the substance were carried out, the manner in which it was transported to avoid detection, and the fact that Mr. Stewart and others called the substance cocaine.

Mr. Stewart's supplier, Dennis Rawls, testified that he bought an amount of cocaine for $16,000 and sold it to Mr. Stewart for $17,000. Carlton McCrary testified to being a crack cocaine dealer who purchased cocaine from Mr. Stewart. He was familiar

8

with the going rate of cocaine in the Wilmington area. The testimony of all three witnesses was corroborated by phone and hotel records. Accordingly, there was ample testimony as to the identity and character of the drug to support the instant conviction.

Mr. Stewart maintains that there was insufficient evidence to support his conviction because the substance was not sampled by a person who is familiar with cocaine. However, such testimony is not required to prove the identity of a drug. *See Dolan*, 544 F.2d at 1221 (stating that the identity of a drug may be established in a number of ways). In *United States v. Harrell*, 737 F.2d 971 (11th Cir. 1984), the Eleventh Circuit expressly rejected the defendant's argument that a witness who testifies about the identity of the drug must also testify as to familiarity with the drug and swear to having used it on the occasion in question. *Id.* at 978-79 (holding that "[i]dentification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt."). There was ample evidence presented in the instant case, including the testimony of Ms. Outlaw, Mr. Rawls, and Mr. McCrary, that would allow the jury to find beyond a reasonable doubt that the substance was in fact cocaine. Accordingly, the District Court did not err in denying Mr. Stewart's request for a new trial.

Mr. Stewart also argues that the evidence is insufficient because the prosecution did not prove the weight of the substance possessed beyond a reasonable doubt. Mr.

9

Stewart was charged with drug related offenses in Counts I through VIII pursuant to 21 U.S.C. § 841(a)(1)[2] and 21 U.S.C. § 846.[3] Those offenses do not require proof of a particular drug quantity to sustain a conviction. *See United States v. Cross*, 916 F.2d 622, 623 (11th Cir. 1990) (holding that the Government is not required to prove quantity as an essential element of a charge under § 841(a)(1) because quantity is not an essential element of the offense); *see also United States v. Toro*, 359 F.3d 879, 883 (7th Cir. 2004) (holding that drug quantity is not an element of a conspiracy to distribute a controlled substance).

## D

Mr. Stewart contends that the District Court erred in denying his motion to strike the testimony of Ms.Outlaw that she "had been threatened from the time of the home invasion back in March of 2000 up until December of 2001." Pursuant to Rule 403 of the Federal Rules of Evidence, this Court reviews a trial court's balancing of the probative value of evidence against its potential prejudicial effect for abuse of discretion. *United States v. Guerrero*, 803 F.2d 783, 785 (3rd Cir. 1986). "[A] trial judge is given broad

---

[2]Section 841(a)(1) makes it unlawful to "knowingly or intentionally . . . (1) manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

[3]Section 846 states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

10

discretion in weighing the probative value of evidence against its potential prejudicial effect." *Id.* (citiing *United States v. Higgins*, 458 F.2d 461 (3d Cir. 1972)). *See Milwaukee Gear Co. v. Charles Benjamin, Inc.*, 466 F.2d 588, 592 (3d Cir. 1972) (acknowledging the considerable discretion vested in the trial judge in allowing use of prior statements). Evidence that is otherwise admissible may be excluded if its probative value is substantially outweighed by the harm likely to result from its admission. *Guerrero*, 803 F.2d at 785.

The Government produced evidence that Mr. Stewart and Darnell Evans were the leaders of a conspiracy to obtain cocaine from Mr. Rawls in Los Angeles, California to be transported to Wilmington, Delaware for distribution. The cash to purchase the cocaine was transported to Los Angeles in hard vinyl suitcases by female couriers including Ms. Outlaw.

In March 2000, at Mr. Stewart's request, Ms. Outlaw packed a large quantity of cash into two suitcases for a trip to Los Angeles to purchase cocaine. Mr. Stewart and Ms. Outlaw arrived late at the airport. They missed their plane and Mr. Stewart directed Ms. Outlaw to take the suitcases back to her home. The following Monday, a burglary occurred at Ms. Outlaw's residence. The money was missing.

When Ms. Outlaw informed Mr. Stewart that the money had been stolen during the home invasion, Mr. Stewart threatened to kill her if she did not get the money back. Ms.

11

Outlaw fled from her home and contacted Federal Bureau of Investigation Agent Scott Duffy. She informed Agent Duffy about Mr. Stewart's threat to kill her.

Ms. Outlaw described Mr. Stewart's purchase of cocaine from Mr. Rawls in Los Angeles. She provided Agent Duffy with directions to Mr. Rawls's residence and accompanied him to Los Angeles where she identified Mr. Rawls in a group of men working on the roof of his house.

On cross-examination, Mr. Stewart's counsel questioned Ms. Outlaw about guns that were found by police officers in her residence in a search conducted in January 2002.

On redirect examination, Ms. Outlaw testified that the guns were hers and that she had them for protection. The prosecutor then asked her: "Protection from what?" Mr. Stewart's counsel objected to the question. The trial court overruled the objection. Ms. Outlaw replied: "I have been threatened from the time of the home invasion back in March of 2000 up until December of 2001."

In *Guerrero*, this Court acknowledged the difficulty in balancing the "need for the evidence" against its probative value, and set out a list of factors to be used as a guide when determining the outcome of the balancing test for threat evidence. *Id.* at 786 (emphasis omitted). Here, the "need for the evidence" was to explain Ms. Outlaw's reason for having guns when her residence was searched in January 2002.

Because the defense counsel asked about the guns on cross-examination in

12

attacking Ms. Outlaw's credibility, the trial court did not abuse its discretion in ruling that the Government was entitled to inquire about her reason for possessing the guns in order to rebut any negative inferences about Ms. Outlaw created by defense counsel's attempted impeachment. Ms. Outlaw's testimony regarding the reason she possessed weapons was not unduly prejudicial. Ms. Outlaw had earlier testified without objection that Mr. Stewart had threatened to kill her. The District Court did not abuse its discretion in concluding that the probative value of her testimony that she acquired guns to protect herself after her life was threatened outweighed the danger of unfair prejudice.

Mr. Stewart also maintains that the District Court erred by failing to give a curative instruction pursuant to *United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997) (per curiam). In *Vaulin*, a prosecutor questioned a government witness on direct examination about threats the witness received while in prison. *Id.* Because the threats had nothing to do with the defendant, this Court agreed with the District Court that the evidence was not relevant and inadmissible. *Id.* This Court held a new trial was not necessary in *Vaulin*, however, because the trial court immediately gave a curative instruction. *Id.* In the instant case, there was no need for a curative instruction because the threats were relevant and directly related to the conduct of Mr. Stewart. Unlike *Vaulin*, the prosecutor in the instant case had a legitimate basis for eliciting the testimony that the witness possessed weapons for her protection.

13

**E**

Mr. Stewart asserts that the District Court abused its discretion in ruling that Kenneth Fassett could not testify that a prosecution witness had made a prior inconsistent statement. We review a district court's ruling on the admission of evidence for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001).

Mr. McCrary testified as a prosecution witness that he had purchased cocaine from Mr. Stewart on three occasions in the spring of 2000. He also stated that Mr. Stewart boasted about his California connection and the use of female couriers to transport cocaine to Delaware.

After the prosecution rested, Mr. Stewart called Mr. Fassett to testify about a conversation that he had with Mr. McCrary in which he stated that he was going to give false testimony against Mr. Stewart. The prosecution objected that the testimony was hearsay. The District Court sustained the objection. The trial court ruled that the alleged prior inconsistent statement was inadmissible because Mr. McCrary had not been given an opportunity to deny or explain the prior inconsistent statement.

Mr. Stewart contends his failure to impeach Mr. McCrary with his alleged prior inconsistent statement is excused by the fact that he was not informed of it until after Mr. McCrary had testified. Rule 613(b) of the Federal Rules of Evidence provides that "[e]xtrinsic evidence of a prior inconsistent statement is not admissible unless the witness

14

is afforded an opportunity to explain or deny the same and the opposite party is afforded the opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Mr. Stewart argues the trial court "erred and abused his discretion in not allowing an interest of justice exception so Mr. Fassett could testify." Appellant's Br. 50.

Rule 613(a) provides that "[i]n examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel."

The District Court was not requested by Mr. Stewart's counsel to permit Mr. Fassett to testify and then allow the Government the opportunity to recall Mr. McCrary to explain or deny the statement. *See United States v. Schnapp*, 322 F.3d 564, 572 (8th Cir. 2003) (holding that the district court did not abuse its discretion by disallowing impeachment testimony event though "the district court had the option to allow defendant to testify regarding [an investigator's] alleged prior inconsistent statement, and then permit the government to recall [the investigator] to explain or deny the alleged statement."). However, that procedure "is not mandatory, but optional at the trial judge's discretion." *Id.* at 571 (quoting *United States v. Sutton*, 41 F.3d 1257, 1260 (8th Cir. 1994).

The phrase "or the interests of justice otherwise require" was added to Rule 613(b)

15

in order to account for situations where the proper foundation for extrinsic evidence of inconsistent statements is not possible to lay, and where there should be discretion to dispense with the foundation requirement, such as when a "witness is released; an inconsistent statement is then discovered; and the witness cannot be recalled to lay the foundation." 4-613 *Weinstein's Federal Evidence* § 613 App 01 (West 2006). The interests of justice exception contemplates situations where, for example, "a witness becomes unavailable through absence or death." *United States v. Barrett*, 539 F.2d 244, 255 (1st Cir. 1970) (quoting *Hearings before the Subcomm. on Criminal Justice on Proposed Rules of Evidence*, 93d Cong. 74-75 (1973)).

Mr. McCrary was available to be recalled in this matter. Mr. Stewart's counsel attempts to excuse his failure to recall Mr. McCrary because "as court appointed counsel with limited resources, [he] was not in the same position to recall the witness as was the government." Appellant's Br. 49. Mr. McCrary was in federal custody at the time of this trial. Mr. Stewart's counsel fails to explain why he did not request the District Court to issue a writ of habeas corpus *ad testificandum* pursuant to 28 U.S.C. § 2241(c)(5). The District Court did not abuse its discretion in concluding that Rule 613(b)'s interest of justice exception did not apply because Mr. McCrary was available to testify had Mr. Stewart's attorney requested the trial court's assistance to produce him.

**III**

16

Mr. Stewart's final argument is that the District Court erred by sentencing him to life imprisonment and to 360 months imprisonment. He asserts that its sentencing decision was unreasonable. The Government argues that this Court lacks jurisdiction to review an Appellant's claim that the sentence is unreasonable because it does not fall within the limited jurisdictional provisions of 18 U.S.C. § 3742. This Court rejected a similar argument in *United States v. Cooper*, 437 F.3d 324, 327 (3rd Cir. 2006).

We are required to review a criminal sentence for reasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 264. District courts must impose sentences that promote the "sentencing goals" listed in 18 U.S.C. § 3553(a). *Cooper*, 437 F.3d at 325-26 (citing *Booker*, 543 U.S. at 259-60). "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors." *Cooper*, 437 F.3d at 329 (citing *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005)). A court does not have to "discuss and make findings as to each of the § 3553(a) factors . . . ." *Id.*

Mr. Stewart argues that the District Court abused its discretion by failing to consider § 3553(a)'s mandate that the sentence be sufficient, but not greater than necessary to effectuate the goals of sentencing. The Pre-Sentence Report ("PSR") calculated Mr. Stewart's Guidelines sentence. The Court sentenced him within the

17

Guidelines range on each count. The District Court did not err in finding him to be a career offender because Mr. Stewart was over eighteen years old when he was convicted of two prior felony offenses-- his 1995 conviction for assault and his 1997 conviction for drug possession. U.S.S.G. § 4B1.1(a).

The District Court analyzed the facts of the case in light of the factors enunciated in § 3553(a). Specifically, the trial court noted that Mr. Stewart had "operated a major drug trafficking enterprise," "directed all the sequence of events that brought the money from Delaware and the drugs back to . . . Delaware," and that he "maintained control of the organization by fear and actual violence." Concluding that the paramount interest in sentencing was to protect the public from Mr. Stewart's drug operation, and noting that rehabilitation was "not going to make much difference," the District Court sentenced Mr. Stewart to serve life imprisonment on Count 1,[4] 360 months on Counts 2 through 8,[5] 60

---

[4]On Count 1, Mr. Stewart was charged for conspiracy with intent to distribute cocaine more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Possession with intent to distribute more than five kilograms of cocaine is punishable by life imprisonment pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The United States Sentencing Guideline for violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A), and 846 is found in U.S.S.G. § 2D1.1. Mr. Stewart's base offense level was 34 on Counts 1 through 9 pursuant to § 2D1.1(c)(3). The Court applied a four level enhancement for his role in the offense pursuant to § 3B1.1(a), providing for a base level of 38 and a Guideline range for imprisonment of 360 months to life in prison.

[5]On Counts 2 through 8 Mr. Stewart was charged with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), punishable by a maximum of 30 years' imprisonment. With a base offense level of 38, the Guideline range was for a sentence of 30 years to life. But the maximum sentence is 30 years pursuant to 21 U.S.C. §§

18

months on Count 9,[6] and 240 months on Count 10.[7] The judge analyzed all of the §

3553(a) factors, and articulated his reasons for fashioning Mr. Stewart's sentence as he

did. Accordingly, we reject Mr. Stewart's challenge to the reasonableness of his

sentence.

Mr. Stewart also contends that the District Court erred in failing to provide him an

evidentiary hearing on his prior convictions. The District Court's refusal to hold an

evidentiary hearing is reviewed for abuse of discretion. *United States v. Grant*, 114 F.3d

323, 326 (1st Cir. 1997); *see also United States v. Miller*, 417 F.3d 358, 363 (3d Cir.

2005) (explaining that a district court has discretion to decide how to handle procedural

issues at sentencing).

This Court has previously held that a defendant can bring a collateral attack

challenging the validity of past convictions during federal sentencing proceedings in only

two circumstances: (1) where the statute or sentencing guideline provides for the right to

---

841(a)(1) and (b)(1)(C).

[6]U.S.S.G. § 2E1.2(a)(2) provides for an offense level of six, or application of the offense level for the underlying criminal activity, which in this case, once again, is 38. However, the maximum sentence on Count 9, interstate travel in aid of a racketeering activity in violation of 18 U.S.C. § 1952, is five years' imprisonment.

[7]For attempted money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(2), Count 10, the maximum punishment is 20 years' imprisonment. U.S.S.G. § 2S1.1(a) calls for a base level of 8 for a conviction for money laundering, or punishment pursuant to "[t]he offense level for the underlying offense from which the laundered funds were derived," which again would call for a level of 38.

a collateral attack; and (2) when the defendant argues that his right to counsel was violated during the underlying state proceedings.  *United States v. Escobales*, 218 F.3d 259, 260 (3d Cir. 2000).  Mr. Stewart has failed to demonstrate that either of these factors is applicable.  The District Court did not abuse its discretion in declining to hold an evidentiary hearing on his prior convictions.

For the foregoing reasons, we will affirm the judgment of the District Court.