**UNITED STATES of America**

v.

**Gabriel GUERRERO, Appellant.**

**No. 85–5852.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 15, 1986.

Decided Oct. 27, 1986.

Russell J. Carbone, Hackensack, N.J., for appellant.

Thomas W. Greelish, U.S. Atty. (Peter C. Harvey, Asst. U.S. Atty., on brief), Newark, N.J., for appellee.

Before ADAMS, STAPLETON and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal from a criminal conviction challenging the admission into evidence of testimony that the defendant had threatened a witness in order to induce him not to testify against the defendant at trial. The defendant challenges the district court's admission of this "threat evidence" under Federal Rules of Evidence 403 and 801.

### I.

Gabriel Guerrero was convicted in the United States District Court for the District of New Jersey on November 7, 1985, of conspiracy to distribute and to possess with intent to distribute cocaine, and the use of a telephone to facilitate the conspiracy. He was sentenced to 14 years imprisonment.

At the trial, three of Guerrero's alleged co-conspirators, Sergio Cabrera, Kenny Dannenberg and William Challenger, having entered cooperation agreements with the government, testified against him. Although Severo Sanclemente had also signed such an agreement, he refused to testify. Sanclemente's daughter testified that she was not aware that Guerrero was involved in cocaine dealings although she did know a number of her father's associates such as Dannenberg. This contradicted testimony, tending to implicate Guerrero, that she had given at an earlier trial.

Co-conspirator Cabrera, on the other hand, testified that Guerrero had sought through threats to inhibit or deter his cooperation with the government. The alleged threats occurred while Guerrero, Cabrera and Sanclemente were all incarcerated at the Metropolitan Correctional Center in New York City. Both Sanclemente and Cabrera had pleaded guilty to participation in the conspiracy and had been sentenced. Guerrero had subsequently arrived at the center for detention pending trial. Under a detention order that had been entered by the district court, Guerrero was to be held in an area separate from persons, such as

Cabrera and Sanclemente, who were serving sentences.

Cabrera testified that, despite the detention order, on October 6, 1985, Guerrero entered Cabrera's cell and proceeded to discuss the upcoming trial. In the course of their conversation, Guerrero allegedly counseled Cabrera to refuse to testify against him. When Cabrera replied that he knew of others who would testify even if he did not, Guerrero allegedly responded that he would "take care" of these other witnesses, and remarked that he knew where Cabrera's family was living. Cabrera testified that, although the whole exchange had at first seemed casual and friendly, it later occurred to him that Guerrero's words were menacing. Cabrera claims that the next day he reported Guerrero's threats to the U.S. Attorney.

The trial judge, the Honorable John W. Bissell, properly considered the admissibility of this "threat evidence" at a hearing outside the presence of the jury. Judge Bissell first considered whether the encounter Cabrera described was likely to have taken place, and concluded that the alleged meeting was not so incredible as to require rejection of the proffered testimony out of hand under Federal Rule of Evidence 403.

Holding that the proffered "threat evidence" did not constitute hearsay because it was a statement of a party, admissible pursuant to Rule 801(d)(2)(A), Judge Bissell then considered whether Rule 403 required exclusion of Cabrera's testimony on the grounds that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentations of cumulative evidence." Fed.R.Evid. 403.

Judge Bissell held that Cabrera's testimony "certainly" had probative value, and was not outweighed by the considerations listed in Rule 403. He therefore allowed Cabrera's testimony concerning Guerrero's alleged threat to be heard before the jury. Guerrero was convicted, and now appeals.

## II.

Guerrero contends that Cabrera's testimony constituted inadmissible hearsay evidence. As the trial court correctly held, however, the hearsay rule does not apply to statements made by a party that are offered against that party. We therefore turn to defendant's argument that the district court erred in admitting prejudicial and confusing evidence with little probative value.

Rule 403 calls for "balancing the probative value of and need for the evidence against the harm likely to result from its admission." Advisory Committee Notes, Fed.R.Evid. 403. Like any balancing test, the Rule 403 standard is inexact, requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference on the part of the reviewing court to the hands-on judgment of the trial judge. Thus, a trial judge is given broad discretion in weighing the probative value of evidence against its potential prejudicial effect. *United States v. Higgins,* 458 F.2d 461 (3d Cir.1972). A trial judge's ruling under Rule 403 may be disturbed only when the judge has clearly abused his discretion. *United States v. Clifford,* 704 F.2d 86 (3d Cir.1983).

The vagueness of the balancing standard has led to some confusion in its application to threat evidence, however. We take this occasion to set out briefly the factors to be considered by a trial court in determining the outcome of that balance.

"Threat evidence" may be admitted to show consciousness of guilt. *United States v. Gonzalez,* 703 F.2d 1222 (11th Cir.1983); *United States v. Rosa,* 705 F.2d 1375 (1st Cir.1983). Although threats are thus of relevance to the proceeding, they constitute a striking example of evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case." *Carter v. Hewitt,* 617

F.2d 961, 972 (3d Cir.1980) (citing J. Weinstein & M. Berger, Weinstein's Evidence § 403[03] at 403–15 to 403–17 (1978)). *See also* Advisory Committee Notes, Fed.R. Evid. 403 (courts should exclude evidence that risks "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

■ The Advisory Committee Notes refer to balancing the probative value of and *need for* the evidence. Advisory Committee Notes, Fed.R.Evid. 403 (emphasis added). We believe that the "need for the evidence" in this context does not mean that the prosecution "needs" the evidence because it simply has a weak case. In fact, it is precisely when the prosecution has little other evidence with which to gain a conviction that resort to inflammatory evidence might be most tempting, and when its use would be most prejudicial. *Cf. United States v. Cook*, 538 F.2d 1000 (3d Cir.1976). Rather, we believe that factors tending to establish the "need for the evidence" include the importance and centrality to the ultimate issue in the case of the fact sought to be proved by the threat evidence, and the availability of other evidence to establish the fact sought to be proven by use of the threat evidence. *See, e.g., United States v. Qamar*, 671 F.2d 732, 736 (2d Cir.1982) (since "the potential prejudice from death threats may be great … the government must have an important purpose for the evidence in order to satisfy the rule 403 balancing test"); C. Wright & Graham, Federal Practice & Procedure § 5214 ("The prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact by other, non-prejudicial evidence.").

■ Also to be considered is the prejudicial nature of the threat evidence. Elements that enter into this question include: the tendency of the particular conduct alleged to "suggest decision on an improper basis, commonly, though not necessarily, an emotional one;" the nature or style of the specific witness's narrative, *cf. e.g., United States v. Burton*, 525 F.2d 17, 19 (2d Cir.1975) (harmless error to admit threat evidence where, among other things, "testimony in question was passed over quickly"); the likelihood that the testimony is true; and the sufficiency of the other evidence presented to make a reasonable connection between the defendant and the offense charged, *see, e.g.,* C. Wright & Graham, Federal Practice & Procedure § 5216. A final factor in considering the prejudicial nature of the evidence is the extent to which any possible inflaming of the jury can be cured by limiting instructions either at the time the testimony is tendered or when the case is submitted to the jury.

There is, of course, no precise value that can be assigned to any of these factors. The trial judge should, however, consider all of these elements in reaching a determination whether the harm likely to result from the proffered testimony outweighs the probative value of the testimony and the "need" for its introduction.

■ In the case at hand, we cannot find that the trial judge abused his discretion in admitting the threat evidence. On the basis of a full hearing outside the jury, the court determined that there were sufficient indicia of the truthfulness of the account to merit its introduction. The court could have found both sufficient corroboration and significance, inasmuch as Sanclemente refused to testify against Guerrero despite his previous agreement and that Sanclemente's daughter altered her story so as not to implicate Guerrero. These facts would be wholly consistent with the content of the conversation alleged by Cabrera, and are of sufficient import to the case so as to militate in favor of the testimony's introduction. *Cf. Qamar*, 671 F.2d at 737 (threat evidence admitted because explanatory of why key witness testified nearly inaudibly, thus helping the jury to assess that witness's credibility).

The content of the alleged threat, if credited, would be highly probative of consciousness of guilt. It contained sufficient reference to the trial and Cabrera's expected role as to constitute more than a merely menacing, yet irrelevant and unconnected, statement on Guerrero's part. *Cf. United*

*States v. Monahan,* 633 F.2d 984, 985 (1st Cir.1980) ("The specificity of this conduct implies a knowledge and fear of particular and damaging testimony intimately related to the prosecution at hand—not a generalized distaste for the courtroom.").

Furthermore, Cabrera's account of the threat was not particularly provocative, and the district court admitted the evidence with a limiting instruction given immediately after Cabrera's testimony as well as during the jury's formal charge. These factors would tend to limit any possible prejudice.

On the basis of this record, then, we cannot say that the trial court abused its discretion in permitting the threat evidence to be introduced, with an appropriate limiting instruction.

### III.

The judgment of the district court therefore will be affirmed.