

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2003

# USA v. Smith

Precedential or Non-Precedential: Non-Precedential

Docket 02-1973

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Smith" (2003). *2003 Decisions.* Paper 559.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/559

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1973

UNITED STATES OF AMERICA

v.

TIMOTHY SMITH,
a/k/a Musa

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 00-cr-00205-1)
District Judge: Honorable Joel A. Pisano

Submitted Under Third Circuit LAR 34.1(a)
March 11, 2003

Before: RENDELL, AMBRO  and MAGILL*, Circuit Judges

(Opinion filed:    May 13, 2003)

OPINION

_____ *Honorable Frank J. Magill, Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

AMBRO, Circuit Judge

Timothy Smith was convicted of conspiring to distribute and to possess with intent to distribute more than 5 kilograms of cocaine and more than 50 grams of crack cocaine, a violation of 21 U.S.C. § 846. Smith challenges his conviction on two grounds: first, that the Government erroneously referred to all four of the Government fact witnesses as co-conspirators; and second, that the District Court erroneously admitted testimony describing a threat made by Smith to a witness as that witness testified at his trial. We reject both challenges and affirm.

## 1. Facts and Background

On January 13, 2000, New Jersey police officers and agents of the United States Drug Enforcement Administration arrested Smith, Jose Arias and Ramon Sanchez after a seven-month investigation into interstate crack cocaine trafficking activities. The Government alleged that Sanchez and Arias sold cocaine powder in New York and that Smith, a resident of Bridgeton, New Jersey, purchased cocaine powder on a regular basis from Sanchez and Arias and sold it in the form of cocaine and crack cocaine in New Jersey. Arias and Sanchez pleaded guilty to conspiracy. Sanchez testified against Smith and received a downward departure as a result of his cooperation.

Four fact witnesses[1] testified for the Government at Smith's trial: Sanchez, who testified that Smith had purchased cocaine powder from him; Donald Moss, who testified that he had acted as a courier for Smith by distributing drugs to and collecting payments from street sellers; and Monroe Wesley and Linda McGriff, who testified that they had purchased crack or cocaine from Smith. Sanchez's testimony included a description of how, on at least one occasion, Smith

---

[1] Several expert witnesses also testified about drug dealing practices.

had sent another person to New York to pick up the cocaine powder and deliver the payment, and that on another occasion a woman had accompanied Smith to New York so that she could sample his purchase to ensure that it was of appropriate quality. McGriff testified that she would go to Wesley's house to pick up her purchase of cocaine powder, and that at least once Wesley had collected her payment.

Wesley also testified that, prior to his arrest, Smith had put a gun to his head and threatened to kill him should he ever talk to law enforcement officials about Smith's drug-related activities. During a side-bar conference in the middle of Wesley's direct testimony, a Deputy United States Marshal observed Smith raise his hand to shield his mouth and whisper something to Wesley. Wesley testified that Smith had mouthed to him, "You're dead." The District Court allowed Wesley to testify about the threatening remark Smith had allegedly made, concluding that the evidence was relevant under Fed. R. Evid. 404(b) because it tended to show consciousness of guilt. The District Court instructed the jury on the limited purpose for which the evidence was deemed relevant, and the purposes for which the evidence was not to be used.

During closing arguments, the Government argued to the jury that the testimony, if believed, of any one of the four government witnesses referred to by the Government as Smith's co-conspirators was sufficient to convict Smith of conspiracy.[2] The jury subsequently found Smith guilty of conspiracy.

---

[2]The Government's argument was as follows: "The government called four former co-conspirators of Tim Smith. Let me call them cooperating witnesses. If you believe only one of them, Tim Smith is guilty of conspiracy. That's all it takes, the testimony of any one of them if believed will satisfy the legal instructions the Court gave you with respect to the requirements of conspiracy."

**2.      Discussion**

    **A.      Charge to the Jury**

Smith argues that the Government invited the jury to convict him on legally insufficient evidence by instructing the jury that Smith could be convicted on the testimony of any of the Government's four fact witnesses, referred to by the Government as Smith's four co-conspirators. Smith argues that because neither Sanchez nor McGriff could legally be considered Smith's co-conspirators, if the jury were to have believed only Sanchez's or McGriff's testimony, that evidence would be legally insufficient to convict him of conspiracy. Because it is impossible to tell from the jury's verdict what testimony they did believe, Smith argues that his verdict must be overturned. He concedes that because he raised no objection to the Government's statement, our review is for plain error affecting a substantial right. United States v. Brown, 254 F.3d 454, 462 (3d Cir. 2001); Fed. R. Crim. P. 52(b).

We do not agree with Smith's ultimate conclusion. If the Government characterized witnesses as co-conspirators and those witnesses legally could not have been considered co-conspirators, then that characterization was error.[3] But the admission of that statement is not

_____

[3]We decline the Government's invitation to conclude that the statement that "[t]he government called four former co-conspirators of Tim Smith" was not error because the prosecutor immediately corrected himself by referring to the four as "cooperating witnesses." The prosecutor did not admit that characterizing these witnesses as co-conspirators was an error or a slip of the tongue. Rather, he said "[l]et me call them cooperating witnesses," thereby implying that the witnesses could be correctly described either as co-conspirators or as cooperating witnesses. This is not a situation where the prosecutor's garbled syntax made a statement ambiguous and subject to interpretation either as a correct or as an incorrect statement of the law. See Brown, 254 F.3d at 465 (dismissing challenge to a "mere prosecutorial slip of the tongue" where prosecutor's closing argument included vague statement in half-sentence form that was "immediately corrected with a proper reference"). Instead we have a clear sentence using the term "co-

4

plain error unless the error could have affected the jury's verdict. Fed. R. Crim. P. 52(b); see also United States v. Walker, 153 F.3d 180, 188 (3d Cir. 1998) ("In order to be plain error, an error must not only be obvious, it must also have affected the outcome of the District Court proceeding.") (citing United States v. Bethancourt, 65 F.3d 1074, 1079 (3d Cir. 1995)); see also United States v. Turcks, 41 F.3d 893, 898 (3d Cir. 1994) ("Because the burden of establishing prejudice is one that [the defendant] bears, we will reverse only if [the defendant] can show that the erroneous charge actually affected the jury's verdict in his case.").

We are unconvinced by Smith's argument that this alleged misstatement affected the jury's verdict. That argument is based on the faulty premise that the jury could only rely on the testimony of a co-conspirator to find evidence of the agreement necessary to convict Smith of conspiracy. To have evidence sufficient to convict Smith of conspiracy, the evidence before the jury needed to include the following elements: "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together to achieve that goal." United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001) (citing United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999)). The Government needed to provide evidence that the defendant conspired with "someone–anyone." Pressler, 256 F.3d at 148. But that evidence could come either from the testimony of the individual with whom the person conspired or from the testimony of another person. The possible prejudicial effect of the Government's statement to the jury (that they would have sufficient evidence to convict Smith if they were to

_____

conspirators," followed by another clear sentence using the term "cooperating witness." In the absence of a clear correction or garbled syntax, we cannot conclude that the characterization of the witnesses as co-conspirators was a mere misstatement and therefore not error.

5

believe the testimony of any one of his four co-conspirators) does not depend on whether all four witnesses were actually co-conspirators, but rather on whether the testimony of all four witnesses included evidence that Smith conspired with another person.

Because the testimony of all four witnesses included evidence from which the jury could conclude that Smith conspired with another person to distribute cocaine, we determine that the Government's allegedly erroneous reference to all four of the Government fact witnesses as co-conspirators did not affect the jury's verdict. Smith concedes that the testimony of Wesley or Moss, if believed, would be sufficient to convict him of conspiracy because both were his co-conspirators.[4] As the Government notes, the testimony of Sanchez included evidence that Smith sent another person to New York to purchase and transport the cocaine powder from New York to Bridgeton, and that Smith came to New York with another person who tested the quality of the cocaine that Smith was purchasing. Further, the testimony of McGriff included evidence that, when purchasing cocaine from Smith, she would go to Wesley's house to obtain the cocaine, and that on at least one occasion it was Wesley, not Smith, who gave her the cocaine and collected her payment. Because the testimony of each witness contained evidence sufficient to convict Smith of conspiracy, the Government's possibly erroneous statement did not affect the outcome of the District Court proceedings, and as a result could not be plain error.

**B.      Admission of Death Threat Evidence**

Smith argues that Wesley should not have been permitted to testify about Smith's allegedly threatening comment. Under Fed. R. Evid. 404(b), evidence of a defendant's other bad

---

[4] Because the question whether the other two Government witnesses could legally be considered Smith's co-conspirators is ultimately immaterial, we do not address it.

acts is not admissible "to prove a defendant's propensity for crime or to suggest to the jury unfavorable inferences reflecting on his character." United States v. Scarfo, 850 F.2d 1015, 1018 (3d Cir. 1988). It is admissible, however, for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

Smith contends that the District Court failed properly to analyze whether the evidence was admissible.[5] Admissibility under Rule 404(b) requires: "(1) a proper evidentiary purpose; (2) relevance under [Fed. R. Evid.] 402; (3) a weighing of the probative value of the evidence against its prejudicial effect under [Fed. R. Evid.] 403; and (4) a limiting instruction concerning the purpose for which the evidence may be used." United States v. Mastrangelo, 172 F.3d 288, 294-95 (3d Cir. 1999) (citing Huddleston v. United States, 485 U.S. 681, 692 (1988)). We hold that while the District Court did not fully weigh the probative value of the evidence against its prejudicial effect, our own review demonstrates that the probative value likely outweighed its prejudicial effect. And to the extent that it did not, any error in admitting the evidence was harmless.

To begin, we note that the District Court's analysis complied with prongs one, two and four of the Mastrangelo test. Smith does not challenge the District Court's analysis under the

_____

[5]We reject the Government's argument that because Smith failed to raise an appropriate objection we must review the District Court's conclusion only for plain error. Smith's counsel did object to the introduction of the evidence, and did not limit the objection, stating that "based on what the Court has read of Guerrero, and I have not[,] let me be clear for the record[,] read the case, but the appropriate sections that the court has cited, I would submit, Judge, that it is inappropriate to have that information before the jury."

7

first two prongs of that test. It is well-established in this Court that threat evidence is relevant to show consciousness of guilt, a permitted purpose under Rule 404(b). United States v. Guerrero, 803 F.2d 783, 786 (3d Cir. 1986). Further, the District Court satisfied the fourth prong of the Mastrangelo test by properly giving a limiting instruction. The District Court "recogniz[ed] the need for an appropriate cautionary limiting instruction to instruct the jury that they are not to utilize this evidence for an improper purpose, but rather for the limited purpose of demonstrating consciousness of guilt of the defendant."

Smith argues that the District Court failed to analyze correctly, under the third prong of the Mastrangelo test, whether the probative value of the evidence outweighed its prejudicial effect. The admission of Rule 404(b) evidence is a matter left to the discretion of the District Court, provided the Court "explains how the probative value of the evidence outweighs its prejudicial effect." Id. If the District Court does not explain, "and the record does not clearly support the finding of probative value, the court of appeals will do the balancing itself." Id.

In Guerrero, 803 F.2d at 786, our Court noted the factors that should be considered when weighing the probative value of threat evidence under Fed. R. Evid. 403. A court should consider "the importance and centrality to the ultimate issue in the case of the fact sought to be prove[n] by the threat evidence, and the availability of other evidence to establish the fact sought to be proven by use of the threat evidence." Id. at 786. To assess the prejudicial effect of evidence, a court should consider "the tendency of the particular conduct alleged to suggest decision on an improper basis, commonly, though not necessarily, an emotional one; the nature or style of the specific witness's narrative; the likelihood that the testimony is true; and the sufficiency of the other evidence presented to make a reasonable connection between the

8

defendant and the offense charged[; and] . . . the extent to which any possible inflaming of the jury can be cured by limiting instructions either at the time the testimony is tendered or when the case is submitted to the jury." Id.

The District Court's analysis, while citing to the Guerrero case, does not explicitly discuss the factors set forth above. The Court concluded that the evidence was probative under Rule 404(b) to show consciousness of guilt, but that "the government doesn't need this evidence." In discussing the evidence's prejudicial effect, the Court stated that because "the communication was made spontaneously by the defendant himself[,] I do not think that he can now be heard to complain that the prejudice he suffers as a result of his own communication outweighs the probative value of the evidence." The District Court's conclusion--that because Smith's communication was spontaneous he has somehow waived the right to object to the evidence as prejudicial--is confusing, as it is not clear how the spontaneity of the statement is relevant to the analysis either of probativeness or prejudice.[6]

Because the District Court did not fully explain "how the probative value of the [death threat] evidence outweighs its prejudicial effect," we will do the balancing ourselves. Mastrangelo, 172 F.3d 288, 294-95. The balance favors the Government.

---

[6]The reference to the spontaneity of the defendant's statement is perhaps related to an earlier comment of the District Court, which noted that the threat in question was "not introduced by the government but rather called to the attention of the court spontaneously by the witness." The District Court thus may have been trying to convey that, because the evidence was not introduced by the Government, it was not necessary to analyze it under Fed. R. Evid. 403. This distinction is unhelpful, and in any case not descriptive. While the threat was first brought to the attention of the Court by the witness, the Government actively pursued the introduction of this evidence.

First, the evidence was highly probative. <u>Guerrero</u>, 803 F.2d at 786 (noting that death threats made to a testifying witness are "highly probative of consciousness of guilt."). There was, however, other evidence that showed Smith's consciousness of his own guilt. Wesley had previously testified, without objection, that Smith had on another occasion threatened Wesley with death. While the fact that evidence of a previous death threat had already been presented to the jury does, to some extent, reduce the probative value of this evidence, so too does it reduce any possible prejudicial effect. If evidence of death threats might suggest to the jury an improper basis for its decision, Smith opened the door by not objecting to testimony of his earlier death threat to Wesley.

Moreover, none of the other <u>Guerrero</u> factors are implicated by this evidence. The fact that a marshal observed Smith whisper something to Wesley increases the likelihood that the evidence was true. And there was sufficient evidence presented to make a reasonable connection between Smith and a conspiracy to sell narcotics. Finally, any remaining prejudicial effect was mitigated by the fact that the District Court gave the jury a limiting instruction. We conclude that the probative value of this evidence outweighed its possible prejudicial effect.

We further note that, to the extent that the prejudicial effect of this evidence did outweigh its probative value, and the evidence was therefore erroneously admitted, that error was harmless. <u>United States v. Cross</u>, 308 F.3d 308, 326 (3d Cir. 2002) (noting that "the improper admission of evidence does not require reversing a conviction if it is highly probable that the error did not contribute to the judgment"). In this case, it is highly probable that the error, if any, in admitting the death threat evidence did not contribute to the judgment because the jury had already heard evidence that Smith had threatened Wesley with death.

10

\* \* \* \* \*

We affirm the verdict of the jury.

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/   Thomas L. Ambro
Circuit Judge