**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3855
_____

KATRINA CONLON,
Individually and as Administratrix of
the Estate of Jared Lee Conlon,
Deceased

v.

TRANS NATIONAL TRUCKING, LLC;
WILLIAM BRADLEY MCDANIELS;
CORNELIUS CARLOS HART

Trans National Trucking, LLC;
Cornelius Carlos Hart,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-05362)
Magistrate Judge: Hon. Carol S. Wells[1]
_____

Submitted under Third Circuit LAR 34.1(a)
October 29, 2012

Before: SLOVITER, AMBRO and ALDISERT, Circuit Judges.

---

[1] The parties consented to have a magistrate judge conduct all proceedings in this case, and on December 16, 2010, District Court Judge Cynthia M. Rufe entered an order referring the case to Judge Wells.

1

_____

OPINION OF THE COURT
_____

ALDISERT, <u>Circuit Judge</u>.

Appellants Trans National Trucking, LLC and Cornelius Carlos Hart appeal from a judgment in the amount of $3,604,599.86, which was entered in the United States District Court for the Eastern District of Pennsylvania after a jury verdict in favor of Appellee, Katrina Conlon. Mrs. Conlon, in her own right and as administratrix of the Estate of her husband Jared Conlon, sued Appellants under a negligence theory after Conlon died while repairing the brakes of a truck driven by Hart and owned by Trans National Trucking. She brought claims under Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. § 8301, and Survival Act, 42 Pa. C.S.A. § 8302.[2] This appeal asks us to decide whether the District Court erred by (1) denying Appellants' motions for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure or, in the alternative, Appellants' motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure; (2) not allowing reference to Conlon's past criminal convictions; (3) not allowing reference to statements in Mrs. Conlon's divorce petition that mentioned Conlon's past criminal convictions; (4) admitting photos of Conlon's deceased body, taken shortly after his death; and (5) refusing to grant remittitur. We will affirm.

---

[2] The jury awarded Mrs. Conlon $2,223,289.00 under the Wrongful Death Act, and $1,270,280.00 under the Survival Act, for a total of $3,493,569.00 in damages. On July 26, 2011, following a motion by Mrs. Conlon for delay damages, an amended judgment was entered in the amount of $3,604,599.86.

## I.

Because we write primarily for the parties, who are familiar with the facts and proceedings of this case, we will revisit them only briefly.

This lawsuit emanates from an unfortunate event in which Jared Conlon, an employee of a mobile maintenance company, was called to examine the brakes of a truck placed out of service. Early in the repairs, Conlon asked Hart to put the truck in gear and pump the brakes so that air could be bled out of the brake lines. After the task was completed, Hart did not return the gear to neutral. Conlon then proceeded to work on the truck for several hours. During that time, Conlon raised the truck's right rear-corner with a bottle jack to gain access to the underside of the truck. Near the end of the repair process, he asked Hart to start the truck so that he could listen for a leak in the brake system's tubing. Thereafter, Conlon crawled under the truck and Hart started the engine. Tragically, as a result of the truck still being in gear, it immediately lunged forward, knocking itself from the bottle jack. A U-bolt on the truck's undercarriage crushed Conlon's skull, killing him instantly. He left a wife and two sons, ages four and one.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332 and § 1441. This Court has jurisdiction under 28 U.S.C. § 1291. For the reasons discussed below, we will affirm the judgment of the District Court.

## III.

### A.

First, Appellants argue that the District Court erred by refusing to grant their motions for judgment as a matter of law under Rule 50 or, in the alternative, their motion for a new trial under Rule 59(a). See Brief of Appellants 11, 14; Defendants' July 27,

2011 Motion. They argue that "the jury's finding of no contributory negligence on the part of [Conlon] constitutes a clear miscarriage of justice warranting a new trial." Brief of Appellants 9. They further argue that "the jury ignored uncontested evidence at trial establishing [Conlon's] own causal negligence" and that "it can only be assumed that the jury's verdict was the result of undue sympathy for [Mrs. Conlon] or some other improper motive." Id. at 14.

We review de novo a court's denial of a motion for judgment as a matter of law, "viewing the evidence in the light most favorable to the prevailing party." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 211 (3d Cir. 2009) (citation omitted). We review for abuse of discretion a court's denial of a motion for a new trial where the movant claims that the verdict was against the weight of the evidence. Am. Bearing Co., Inc. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984). A new trial may be granted "because the verdict is against the weight of the evidence" only "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." Marra v. Phila. Hous. Auth., 497 F.3d 286, 309 n.18 (3d Cir. 2007) (citation omitted). Based on our review of the record, we see no basis for granting this extraordinary relief and will affirm.

The defendant has the burden of proving contributory negligence. Rice v. Shuman, 519 A.2d 391, 395 (Pa. 1986). To succeed on this issue, it was "incumbent" upon Appellants "to produce the evidence and to persuade the jury on this issue." See id. Based on the record before us, we hold that it was well within the jury's province as the finders of fact to conclude that Conlon was not contributorily negligent, and this Court will not disturb its permissible conclusion.

Appellants had every opportunity to retain a mechanic expert to evaluate,

4

comment on and, if appropriate, criticize Conlon's conduct. They failed to do so. Rather, they attempted to establish his alleged negligence through the cross-examination of Plaintiff's own trucking expert, Brooks Rugemer, as to whether Conlon could have performed his functions differently. Appellants emphasize throughout their brief that Rugemer stated that he "most likely" would not allow a mechanic he was supervising to have his head under the frame of a truck while it was being started. See Brief of Appellants 6, 11; Reply Brief of Appellants 1-3. Despite this limited testimony by Plaintiff's trucking expert, we hold that it was well within the jury's province to find that Conlon's conduct did not fall below the applicable standards of conduct for a mechanic in his position and to find that Appellants had not met their burden of proving that he was contributorily negligent. We will not disturb the jury's conclusion.

B.

Second, Appellants argue that the District Court erred by "barring all reference to [Conlon's] criminal convictions and fines" because this "was relevant to the issue of damages." Brief of Appellants 14, 17. On June 24, 2011, the District Court issued an order stating that Appellants could "confront [Mrs. Conlon] with statements she made in her divorce petition that [Conlon] was not 'situated to provide proper care' for his children" but that they could not "otherwise mention [Conlon's] prior criminal history." App. 25. Based on this Order and the parties' filings in the District Court, it is our understanding that the District Court barred reference to Conlon's convictions after balancing the probative value of such evidence against the danger of unfair prejudice under Rule 403 of the Federal Rules of Evidence. See Plaintiff's June 3, 2011 Motion in Limine to Preclude Any and All Evidence of Criminal History 2.

Rule 403 states that relevant evidence may be excluded "if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." This Court has stated that "[i]f judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988) (alteration in original) (quoting United States v. Long, 574 F.2d 761, 767 (3d Cir. 1978)). Consequently, we review a district court's decision regarding the admissibility of evidence for abuse of discretion. United States v. Higdon, 638 F.3d 233, 238 (3d Cir. 2011). We will affirm.

Appellants state that Conlon owed "significant criminal fines" that should have been considered by Plaintiff's expert economist when calculating the loss-of-future-earnings figure. Brief of Appellants 17. Appellants state also that evidence of Conlon's convictions was relevant to determining the appropriate amount of damages to assign for loss of "guidance, tutelage and moral upbringing" under Mrs. Conlon's wrongful death claim, especially considering that Mrs. Conlon "repeatedly testified at trial about the sterling qualities of [Conlon] as a husband and father." Id. at 19.

Even if we accept Appellants' argument that evidence of Conlon's past convictions was relevant to the issue of damages, the District Court still had discretion to exclude such evidence if it determined that the evidence was unfairly prejudicial.[3] Appellants rely heavily on Cobige v. City of Chicago, 651 F.3d 780, 784-785 (7th Cir.

---

[3] With regard to lost future earnings, the District Court was permitted to hold that evidence of Conlon's criminal convictions was inadmissible for the purposes of assessing his future earning capacity because Appellants offered no additional evidence showing what effect the criminal record would likely have on such earnings. See Toombs v. Manning, 835 F.2d 453, 469 (3d Cir. 1987) (holding that a trial court did not abuse its discretion by allowing an injured subway passenger's criminal record to be used for impeachment purposes but not for assessing lost future earnings because the transit authority offered no other evidence showing the effect the record would have).

2011), to support their position that the District Court exceeded the permissible grounds of discretion. We are not persuaded, however, by Appellants' analogy to this non-binding Seventh Circuit case, which is easily distinguishable.

Cobige involved damages for "loss of companionship" and "enjoyment of life" only, and a decedent who had been absent and in near-constant trouble with the law for almost her entire adult life. Id. Conlon, on the other hand, was only 20 years old when he was convicted, and subsequently he spent 13 months in a minimum security boot camp. Thereafter, he was never again in trouble with the law, he had children and married after his conviction, and remained employed as a mechanic, supporting himself and his family.

We hold that the District Court acted well within its discretion under Rule 403 when it excluded evidence of Mr. Conlon's past criminal convictions.

C.

Third, Appellants argue that the District Court erred by not admitting into evidence certain statements found in Mrs. Conlon's divorce petition. Brief of Appellants 22. This included her statement that her husband was "presently on probation for criminal acts" to explain her admissible statement that he was not "situated to provide proper care" for his children. Id.; App. 65. We will affirm.

Based on the District Court's June 24, 2011 Order and the briefs on appeal, it is our understanding that the District Court restricted Appellants' use of Mrs. Conlon's divorce petition in order to exclude any direct or indirect reference to her husband's past criminal convictions. See Brief of Appellants 22 (arguing that excluding references to divorce petition statements about Pennsylvania criminal convictions meant Appellants were unable to show why Mrs. Conlon sought restricted visitation privileges and thought her husband was not situated to provide proper care); Brief of Appellee 19 (arguing the District Court properly excluded statements in Mrs. Conlon's divorce petition because

"Mr. Conlon's distant criminal conduct and probation [are] irrelevant or, alternatively . . . the prejudicial value of it greatly outweigh[ed] its probative value").[4]

Our analysis regarding whether the District Court abused its discretion under Rule 403 by excluding evidence of Conlon's past criminal convictions does not change simply because the evidence was contained in his wife's divorce petition; nor does our analysis change because Appellants wished to use these statements to explain why she had stated that her husband was not situated to provide proper care to their children. Again, relevant evidence <u>may</u> be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403, Federal Rules of Evidence.

We hold that the District Court acted well within its discretion under Rule 403 to forbid Appellants from cross-examining Plaintiff with statements from her divorce petition that referenced directly or indirectly Conlon's past criminal convictions.

D.

Fourth, Appellants argue that the District Court erred in admitting two photographs—joint exhibits J-2.2 and J-2.4—which were taken of Conlon's body shortly after the incident. Appellants argue that the District Court abused its discretion under

---

[4] The District Court's June 24, 2011 Order stated that (1) Appellants could confront Mrs. Conlon with statements in her divorce petition that she and Conlon had lived separate and apart since January 10 to impeach her anticipated testimony that they had reconciled; (2) Appellants could confront Mrs. Conlon with her statements in the petition that Conlon was not "situated to provide proper care" for their children, and that Conlon should have "restricted visitation privileges"; and (3) Appellants were not permitted to refer to the divorce petition for any other reason. App. 26 (court order); App. 63-68 (Mrs. Conlon's divorce petition).

Rule 403 by admitting the photographs because diagrams of his injuries were also used at trial, rendering the photographs "unfairly prejudicial and needlessly cumulative." Brief of Appellants 25.

Relevant evidence <u>may</u> be excluded if its probative value is substantially outweighed by a danger of unfair prejudice or if it is needlessly cumulative. Rule 403, Federal Rules of Evidence. Evidence may be unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." <u>United States v. Guerrero</u>, 803 F.2d 783, 785 (3d Cir. 1986) (internal quotation marks and citations omitted). We review a district court's decision to admit evidence for abuse of discretion. <u>Id.</u>

The Appellee argues that the photographs were relevant because she had the burden of proving that the incident was the cause of Conlon's death. According to the trial transcript, the District Court made its ruling after counsel for Plaintiff told the Court, "I don't want the jury to go, [']what the heck happened here[?']" App. 396. According to the District Court, the probative value of the photographs was not substantially outweighed by the risk of unfair prejudice because, although at least one of the photographs "revealed a good deal of blood," it "did not unfairly inflame the jury's passion or invoke its emotions." App. 35. Moreover, Appellee argues that one such photograph helped to impeach the testimony of Hart, Appellants' witness, who stated that Conlon was not bloody immediately following the incident. Brief of Appellee 20; App. 373. For these reasons, we hold that it was within the District Court's discretion to admit the photographs into evidence.

E.

9

Lastly, Appellants argue that the District Court erred by "refusing to remit the jury's award of wrongful death damages in the amount of $2,223,289 as excessive, and not supported by the evidence presented at trial." Brief of Appellants 26. At the center of their argument is the amount awarded for "loss of guidance, tutelage, and moral upbringing,"[5] which Appellants claim had "no basis in fact" and "should not have been presented to the jury." Id. at 29. We will affirm.

"A district court's decision regarding a request for a remittitur is reversed only for abuse of discretion, and a case is remanded for a new trial only if the verdict is so grossly excessive as to shock the judicial conscience." William A. Graham Co. v. Haughey, 646 F.3d 138, 142 (3d Cir. 2011) (internal quotation marks and citations omitted).

Appellants' argument fails for two reasons. First, although Appellants did generally raise the issue of remittitur in their post-trial motions in the District Court, the specific remittitur arguments set forth in this appeal were not preserved and may now be considered waived. Notably, Appellants' post-trial motions did not mention anything specific about the wrongful death award, the amount of damages assigned for "loss of guidance, tutelage, and moral upbringing," or the Court's instruction to the jury regarding the damages at issue, which stated:

> The monetary value of the guidance, tutelage and moral upbringing [Conlon] would have provided his children, that figure is not contained in the expert's

---

[5] The parties dispute how much the jury actually awarded for "loss of guidance, tutelage, and moral upbringing" under the Wrongful Death Act. See Brief of Appellants 29 (citing $1,781,291.00, the figure that appears in the District Court's September 19 Memorandum); Brief of Appellee 23 ("With all due respect to the [District Court,] . . . . [i]n reality there is no way to know the specific amount of the award that the jury made for [loss of guidance, tutelage, and moral upbringing]."). For the purposes of our analysis, we will accept the figure presented by the District Court and adopted by Appellants: $1,781,291.00.

analysis. So, collectively you will have to decide what you think, . . . what value that would have had to his two young sons over their lifetime.

App. 585-586. Indeed, the District Court significantly noted in its post-trial memorandum that Appellants "ha[d] not explained why they [thought] the jury's total award of $3,493,569 was excessive." App. 36. Instead, Appellants stated only that "based on the evidence, record, and jury instructions provided, the jury improperly calculated economic damages." Defendants' July 27, 2011 Motion at 11.

Second, even if the issue was not waived, Appellants still may not prevail. Appellants argue that "[d]amages recoverable under the Pennsylvania Wrongful Death Act are limited to the *pecuniary* loss [a] family has sustained, . . . and no recovery is permitted for such intangible injuries as loss of affection and companionship, loss of solace, anguish or mental suffering." Brief of Appellants 27. Appellants fail to acknowledge, however, that the Act allows recovery for "the loss of companionship, comfort, society and guidance of a parent," Steiner by Steiner v. Bell Telephone Co., 517 A.2d 1348, 1350 (Pa. Super. 1986), also known as the "loss of services in guidance, tutelage, and moral upbringing," see Buchecker v. Reading Co., 412 A.2d 147, 158 (Pa. Super. 1979).

At trial, Mrs. Conlon testified, among other things, that her husband engaged in "everyday family things" such as trips to Myrtle Beach, riding bikes, four-wheeling and visiting parks. App. 435. She testified also that Conlon provided gifts to his children, App. 441-442, and caught lightning bugs with his older son, App. 442-443. She also recalled for the jury a story about a wooden toy car that Conlon painted for his son. Id.

Based on the record before us, we hold that it was within the District Court's discretion to deny Appellants' motion for remittitur. Furthermore, the $2,223,289.00 awarded to Conlon's family by the jury under the Pennsylvania Wrongful Death Act does

11

not shock our conscience. We will affirm.

*     *     *     *     *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.