**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-2004

———————

UNITED STATES OF AMERICA

v.

LUCAS SUMLER,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. Action No. 2-16-cr-00218-001)
District Judge: Honorable Esther Salas

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2018

Before:  GREENAWAY, JR., KRAUSE, *Circuit Judges*,
and JONES, *District Judge.*[*]

(Opinion filed: February 15, 2018)

_____

[*] The Honorable John E. Jones, III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

OPINION*

JONES, *District Judge.*

Lucas Sumler was convicted following a two-day jury trial for possession of a weapon by a convicted felon, in violation of 18 U.S.C. § 922(g). Sumler appeals the final judgment of conviction, entered on April 24, 2017, arguing that the District Court erred in two rulings regarding the admissibility of testimony from a police officer. We will affirm.

## I. Background

Sumler was arrested on March 25, 2016 near the Dayton Townhouses in Newark, New Jersey. The Dayton Townhouses have direct access to a grass alleyway leading to a fence that separates the complex from the bordering town of Elizabeth, New Jersey. As part of their evening patrol, Detectives Stephen Perez and Steven Dellavalle positioned themselves in front of the fence bordering the towns. Prior to this particular evening, Detective Dellavalle had received an anonymous tip that individuals used the fence to flee law enforcement.

From their position near the fence, the Detectives observed Sumler and others gathered near one of the townhouses. The Detectives relayed their observations to two other detectives, who sat in unmarked police vehicles nearby. After receiving the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

information from Detectives Perez and Dellavalle, both cars drove towards the group of people from different directions. As the vehicles approached, Sumler walked away from the group. He then ran towards the fence where Detectives Perez and Dellavalle were positioned.

According to the testimony offered at trial, Sumler stopped and pulled out a loaded firearm when he saw the Detectives by the fence. Both Detectives drew their weapons and pointed them at Sumler. Sumler threw the firearm and ran in the opposite direction. He was arrested shortly thereafter and a firearm was recovered from nearby.

Before trial, Sumler moved to exclude as hearsay any testimony that Detective Perez received a tip or an intelligence report that people used the fence behind the Dayton Townhouses to flee from the police.[1] Though Sumler's primary objection was that the testimony constitutes hearsay, he devoted most of his discussion to argue that the testimony was unreliable and prejudicial in suggesting that the fence was used by

---

[1] The transcript of Sumler's pre-trial motion argument is somewhat vague because his arguments could be read to pertain to testimony from *either* Detective Perez or Dellavalle, or perhaps both. At various points both Sumler and the District Court are clearly referring to one specific person, s*ee* App. 27 ("If he wants to say …"), 29 ("I will permit him to say. . ."), and at times the District Court refers to both officers, *see* App. 30 ("I will permit the officers to testify . . . ."). However, in his brief in support and brief in reply for his appeal, Sumler only references Detective Perez's testimony. Further, Sumler makes clear that his pre-trial arguments were focused on Detective Perez when he quotes the transcript of those proceedings and adds "Officer Perez" in brackets to clarify who he was referring to when he stated "he" during his pre-trial motion argument. Appellant's Reply Br. 3. Sumler also does not respond to Appellee's contention that Detective Perez's testimony was cumulative of Detective Dellavalle's, which Sumler "does not challenge [] on appeal." Appellee's Br. 15. Given all of this, we construe Sumler's pre-trial motion, and the District Court's ruling on said motion, to pertain to the testimony of Detective Perez.

individuals to evade the police. Sumler maintained, "[i]t is the escape word that bothers me. I have no problem with, if it is something more generic but would give the officer an opportunity to explain it is an area people can go in and out of." App. 28. The District Court denied the motion, ruling that "it is not hearsay." App. 29. Regarding prejudice, the District Court concluded that the testimony is fair to "explain why the officers positioned themselves on foot." App. 30. The District Court commented that it was "not sure the word escape is inordinately prejudicial, but [] understand[s] your concern with the word escape and provided that we can get that conveyed to the jury without using necessarily the word escape, I think it is fair testimony for this jury to receive." App. 29-30.

The prosecution agreed to avoid using the phrase "escape route." During Detective Perez's testimony at trial, Sumler renewed his objection that the testimony was unduly prejudicial. Sumler argued that the word "escape" "is not probative of anything," though the jury can get "the information that people use that as a way to exit the complex." App. 118. The District Court recognized that the word escape "[f]rankly, is [] prejudicial", but overruled his objection under Federal Rule of Evidence 403. App. 118. The testimony ultimately elicited by the prosecutor from Detective Perez is as follows:

> Q:     Detective, that area that you and Detective Dellavalle positioned yourself at, isn't it true that you had received information that that specific area had been used by people to exit the complex?
> A:     That's correct.
> Q:     And to evade the police?
> A:     Yes.
> Q:     And before that date, had you yourself seen people use that as an exit to evade the police?
> A:     Yes, I have.

4

Q:     And approximately how many times?
A:     Approximately five times.

App. 119. At the time of Detective Perez's testimony, Detective Dellavalle had already testified that he and Detective Perez positioned themselves where they had because he had "received information that that grassy gap area is used by people who want to avoid apprehension by the police." App. 67. Sumler did not object to this portion of Detective Dellavalle's testimony.

The jury ultimately found Sumler guilty of unlawful possession of a firearm by a felon, and he was sentenced to 105 months in prison and a three-year term of supervised release. This appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Our review of the District Court's determination as to whether the officer's testimony is hearsay is plenary. *United States v. Donley*, 878 F.2d 735, 737 (3d Cir. 1989). We review whether the evidence should have been excluded as unduly prejudicial under Rule 403 for abuse of discretion. *Id*. However, "we do not afford [a] court the deference normally afforded when we review for abuse of discretion if the district court failed to engage in on-the-record balancing." *United States v. Bailey*, 840 F.3d 99, 117 (3d Cir. 2016). Even if we find that the District Court's evidentiary ruling was in error, we must consider the harmless error doctrine: "A non-constitutional error at trial does not warrant reversal where 'it is highly probable that the error did not contribute to the judgment.'" *United*

5

*States v. Stadtmauer*, 620 F.3d 238, 265–66 (3d Cir. 2010) (quoting *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000)).

## III.  Discussion

Sumler appeals his final judgment of conviction and argues that the District Court committed error in its two rulings regarding the admissibility of Detective Perez's testimony. First, Sumler argues that the District Court erred in its pre-trial ruling that the testimony was not hearsay. Second, Sumler argues that the Court failed to engage in the proper balancing analysis under Rule 403 in its resolution of his objection to Detective Perez's testimony at trial, and that the probative value of the testimony was substantially outweighed by the potential for prejudice. We will address each argument in turn and, for the reasons that follow, we will affirm.

### A.  Hearsay

Rule 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The District Court ruled that Detective Perez's testimony was not hearsay because it was offered to "explain why the officers positioned themselves on foot." App. 30. We see no error in the District Court's determination of the purpose of the statement. Certainly, its purpose was not to persuade the jury of the truth that others in the past have used the fence behind the Dayton Townhouses to flee from the police. It was for the jury to understand why Detectives Perez and Dellavalle were standing in the dark by the fence on the night of Sumler's arrest.

6

In *United States v. Sallins*, we cautioned that "[w]hile officers generally should be allowed to explain the context in which they act, the use of out-of-court statements to show background has been identified as an area of 'widespread abuse.'" 993 F.2d 344, 346 (3d Cir. 1993) (quoting 2 *McCormick on Evidence* § 249, at 104 (4th ed. 1992)). Sumler invokes *Sallins* and argues that admission of Detective Perez's statement under the guise of background information was an abuse. To this end, Sumler argues that the District Court admitted "too much unnecessary background information." Appellant's Br. 25. Sumler contends that the only background information necessary would have been that the fence was an area in which people can go in and out; the additional out-of-court statement that people used the fence to flee from the police was not essential to further explain the Detectives' actions.

This case is distinguishable from *Sallins*. There, the trial court admitted the contents of a 911 call that described a "black male wearing all black clothing carrying a gun" at a certain location. *Sallins*, 993 F.2d at 347. Police responded by speeding to the location and there observed the defendant throw an object that appeared to be a gun and run. *Id*. at 345. The prosecution repeatedly "used the contents of the radio call to prove the truth of the matter asserted, that there was a black man wearing all black clothes with a gun at the place and time in question, as well as to establish the implied fact that [the defendant] was the man with the gun." *Id*. at 347. The describing information was unnecessary to explain why the officers pursued the defendant because they testified that they saw him throw what appeared to be a gun; in pursuing the defendant, they were not acting because of the contents of the 911 call. *See id*. We therefore held that the

7

testimony was offered for the truth of the matter asserted rather than as background to explain the officer's actions.

Here, the statement did not concern any details used to describe Sumler or to prove Sumler's guilt. It was offered to explain why two Detectives positioned themselves in a seemingly odd area during patrol that night. While Detective Perez did testify that he had personally witnessed people use the fence as an exit to evade the police, using the additional background information that the Detectives received a tip pointing them towards that position to explain their actions is a "valid," "non-hearsay purpose." *Id.* at 346. Sumler maintains that the same information could have been conveyed with general terms that the fence was an area used by people to enter and exit the complex; however, this information does not express the same explanation for why two special enforcement bureau detectives would position themselves in that specific spot. While there are undoubtedly countless ways for a person to enter and exit the Dayton Townhouses complex, the Detectives positioned themselves by the fence in response to information that this is the area where suspects were likely to flee.

We therefore find no error in the District Court's ruling that Detective Perez's statement was not hearsay because it was not offered for the truth of the matter asserted. We note that even if we were to assign error to the District Court's conclusion in this regard, that error would be harmless for two reasons; first, Detective Perez immediately conveyed similar information based on personal knowledge that he had seen people use the fence to evade the police, rendering the testimony alternatively admissible pursuant to Rule 602, *see* Fed. R. Evid. 602. Second, and as aforestated, by the time Detective Perez

8

made the statement in question, Detective Dellavalle had already testified to the same information regarding a tip that people use the area to evade the police. Sumler did not object to Detective Dellavalle's testimony at trial and does not address his testimony on appeal. We therefore could easily conclude that even if Detective Perez's testimony constituted inadmissible hearsay, "it is highly probable that the error did not contribute to the judgment." *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000) (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc)).

## B. Federal Rule of Evidence 403

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 is a balancing test, and "[l]ike any balancing test, the Rule 403 standard is inexact, requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference on the part of the reviewing court to the hands-on judgment of the trial judge." *United States v. Guerrero*, 803 F.2d 783, 785 (3d Cir. 1986).

Sumler argues that the District Court failed to engage in the on-the-record balancing required for Rule 403 determinations. This argument is patently without merit in light of the record. The District Court considered the risk of prejudice and the probative value of Detective Perez's testimony both during Sumler's pre-trial motion hearing and in response to Sumler's objection at trial. On the record, the District Court considered the purpose and probative value of the proposed testimony, *see, e.g.*, App. 27

9

("[W]e have to allow officers to testify, at least generally, why they positioned themselves there. To not explain that to the jury I think is confusing."), and the potential for prejudice, *see, e.g.*, App. 29 ("I am not sure the word escape is inordinately prejudicial, but I can understand your concern with the word escape. . . ."); *see also* App. 118 ("I am not sure whether it was necessary, but the government decided to compromise and make, and not use the word escape. I think it is fair cross examination."). This is a far cry from cases where the district court's "Rule 403 balancing does not reflect the meaningful evaluation of [] competing considerations as required by our cases" or where the district court's ruling entails "nothing more than a bare recitation of Rule 403." *United States v. Caldwell*, 760 F.3d 267, 284 (3d Cir. 2014). Sumler is correct that the District Court's on-the-record consideration of Sumler's objection at trial was brief and did not include the formulaic Rule 403 balancing language. However, it is clear from the record that the District Court carefully and fully evaluated the admissibility of Detective Perez's testimony with regard to its probative value and potential for prejudice at two separate stages of the proceedings, and we perceive no error in its methodology. To find otherwise would elevate form over substance in the face of a record that unmistakably reflects the District Court's substantive analysis.

Accordingly, because the District Court "is in the best position to assess the extent of the prejudice caused a party by a piece of evidence," we afford the trial judge "very substantial discretion" in Rule 403 determinations. *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978). "A district court's decision, therefore, cannot be reversed merely because we, as members of a reviewing court, possess a different view concerning the

10

probative value or prejudicial effect of the challenged evidence." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000). It is not our place to opine whether we would have admitted the evidence under Rule 403 in the first instance, but to determine whether the district court's conclusion is "arbitrary and irrational." *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997) (quoting *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990)); *see also Long*, 574 F.2d at 767 ("If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.").

We hold that the District Court did not abuse its discretion in admitting Detective Perez's testimony over Sumler's Rule 403 objection. Further, for the same reasons noted in the previous section regarding hearsay, even if the admission of Detective Perez's testimony was in error, that error was harmless.

## IV.   Conclusion

For the foregoing reasons, we will affirm the District Court's final judgment of conviction.